AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| DANIEL JOSEPH TISONE | ) | 2:22-mj- 1043-DNF |
| | ) | |
| | ) | |
| | ) | |

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     March 2020 through present     in the county of     Collier     in the

Middle     District of     Florida     , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1957 | Illegal Monetary Transactions |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Grace Bruno, Special Agent, FBI
_Printed name and title_

Sworn to before me and signed in my presence.

Date:     03/30/2022

_____
_Judge's signature_

City and state:         Fort Myers, Florida

Douglas N. Frazier, Senior U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF WARRANT

I, Grace M. Bruno, being duly sworn, states as follows:

1.     I am a Special Agent with the Federal Bureau of Investigation (FBI), Tampa Field Office- Fort Myers Resident Agency, and have been employed in this capacity since June 2021. As a Special Agent assigned to the criminal squad, I am responsible for the investigation of violations of United States federal law, specifically complex financial crimes, to include violations of 18 U.S.C. §§ 1343 (Wire Fraud), 1344 (Bank Fraud), and 1957 (Illegal Monetary Transactions).

2.     This affidavit supports an application for a criminal complaint and arrest warrant for DANIEL JOSEPH TISONE ("TISONE") for fraud and the unlawful use of fraudulently obtained loan proceeds related to the fraudulent submission of Paycheck Protection Program ("PPP"), Economic Injury Disaster Loan ("EIDL"), and Main Street Lending Program ("MSLP") applications to federally insured financial institutions and the Small Business Administration ("SBA"). Specifically, TISONE electronically submitted a total of five (5) false and fraudulent PPP loan applications to a federally insured financial institution, which led to the issuance of approximately $573,954.17 in PPP loan funds. Additionally, TISONE submitted three (3) false and fraudulent EIDL applications to the SBA, which led to the issuance of approximately $456,000 in EIDL and EIDL Advance funds. TISONE also electronically submitted a false and fraudulent MSLP loan application and supporting financial documents to a federally insured financial institution, which led to the issuance of approximately $1,500,000 in MSLP loan

1

funds. In total, approximately $2,523,954.17 in loan proceeds were issued to TISONE as a result of his scheme to defraud financial institutions and the SBA. The fraudulently obtained loan proceeds were deposited into bank accounts that TISONE opened and controlled. As detailed later, TISONE misused the fraudulently obtained loan proceeds, which included the purchase of real property in violation of 18 U.S.C. § 1957.

3.     Based on these acts, as set forth more fully below, probable cause exists to believe that TISONE violated 18 U.S.C. §§ 1343 (Wire Fraud), 1344 (Bank Fraud), and 1957 (Illegal Monetary Transactions). This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Unless specifically indicated otherwise, all dates and amounts described in this affidavit are approximate and all statements or representations described in this affidavit are related in substance and in part.

### STATEMENT OF PROBABLE CAUSE

#### Overview of the Paycheck Protection Program

4.     In March of 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide immediate assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses,

2

through a program referred to as the PPP. The program was administered by the SBA.

5.     To obtain a PPP loan, a qualifying business must submit a PPP application, signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation to the lending institution showing their payroll expenses. Typically, businesses would supply documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").

6.     A PPP loan application must be processed by a participating lender. If approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan. In the ordinary course of providing the loan guaranty, neither the SBA nor any other

3

government agency checked IRS records to confirm that the applicant had paid the payroll taxes represented in the PPP applications.

7.     PPP loan proceeds MUST be used by the business on certain permissible expenses – Payroll costs, interest on mortgages, rent, and utilities. Interest and principal on the PPP loan are entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain amount of the loan proceeds on payroll expenses. A PPP loan borrower may qualify for full loan forgiveness if during the 8 to 24 week covered period following loan disbursement, (i) employee and compensation levels are maintained, (ii) the loan proceeds are spent on payroll and other eligible expenses, and (iii) at least 60% of the proceeds are spent on payroll costs. A borrower can apply for forgiveness once all loan proceeds for which the borrower is requesting forgiveness have been used. To seek forgiveness, the borrower must submit an application to the lender, providing a range of information and supporting documentation to establish eligibility for forgiveness. Once the borrower furnishes a complete application, the lender then applies to the SBA for forgiveness, furnishing the information provided by the borrower. Based on the borrower's information furnished by the lender, the SBA determines whether the PPP loan qualifies, in who or in part, for forgiveness.

8.     In December of 2020, the Economic Aid Act was enacted, which authorized the SBA to guarantee Second Draw PPP loans under generally the same terms and conditions available under the original PPP ("First Draw PPP Loans").

4

Only First Draw PPP Loan borrowers who had used, or will have used, the full amount of the First Draw PPP Loan on or before the expected date on which the Second Draw PPP Loan was disbursed could receive a Second Draw PPP loan. Further, a borrower would be eligible for a Second Draw PPP loan only if it had 300 or fewer employees and experienced a revenue reduction of 25% or greater in 2020 relative to 2019.  Second Draw PPP loan applicants were also required to make the same or similar certifications and representations concerning the use of PPP funds. Pertinent to this case, TISONE applied for three (3) First Draw PPP Loans and two (2) Second Draw PPP loans.

### Overview of the Economic Injury Disaster Loan Program

9.     The EIDL program was an SBA program that was in existence prior to the passing of the CARES Act. It provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances (Economic Injury Disaster Grants or "EIDG") of up to $10,000 to small businesses within three days of applying for an EIDL. The EIDG was determined by the number of employees the applicant certified as having. The EIDG did not have to be repaid.

10.     To obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such

5

as the number of employees, gross revenues for the 12-month period preceding the disaster, and the cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge. The SBA would rely on the self-certifications contained in the application to verify that the applicant was an eligible entity.

11. An EIDL applicant must also respond to questions regarding the applicant's personal criminal history. Prior to May 4, 2020, EIDL intake forms asked if applicants had for any criminal offense- other than a minor vehicle violation- been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgement). After May 4, 2020, the EIDL intake form was updated by asking if the applicant was convicted of a felony and/or was placed on probation within the previous five years. TISONE applied for an EIDL loan before and after the question regarding personal criminal history was changed in the EIDL application.

12. EIDL applications are submitted directly to the SBA. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the application about employment, revenue, and costs of goods, as described above. Any funds issued under an EIDL or EIDG are issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave,

6

production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

13.     Between April 2020 and March 2021, the EIDL amount was calculated to cover six months of gross profits.  The gross revenue and costs of goods sold figures submitted by the EIDL applicant for the 12 months preceding the date of the disaster (January 31, 2020) were utilized to calculate the EIDL amount. Specifically, the cost of goods sold was subtracted from the gross revenue and the amount was divided by two to calculate the EIDL amount which was capped at $150,000. The EIDG was calculated based on how many employees the EIDL applicant stated they had. An EIDL applicant would be entitled to $1,000 in EIDG for each additional person the business employed and was capped at $10,000.

### Overview of the Main Street Lending Program

14.     The CARES Act also authorized the Secretary of Treasury and the Federal Reserve Board to create the MSLP under Section 13(3) of the Federal Reserve Act to promote lending to small and medium sized businesses affected by the coronavirus pandemic. As part of the MSLP, the Secretary of the Treasury and the Federal Reserve Board created a government-owned facility to encourage private lending by borrowing funds from the Federal Reserve Bank of Boston and using the funds to purchase 95 percent participation in loans made by private lenders that conformed to the MSLP's terms. A participating private lender would retain the

7

remaining 5 percent of each loan. In this way, MSLP assumed nearly all the risk of default.

15.     The MSLP consists of three credit facilities: the Main Street New Loan Facility, Main Street Priority Loan Facility, and the Main Street Expanded Loan Facility. Under the Priority Loan Facility Term Sheet, the total value of a loan must not exceed "the lesser of (i) $50 million or (ii) an amount that, when added to the Eligible Borrower's existing outstanding and undrawn available debt, does not exceed six times the Eligible Borrower's adjusted 2019 earnings before interest, taxes, depreciation, and amortization," colloquially called the "EBITDA" formula.

16.     Eligible MSLP borrowers apply through a private lender. If the lender approves the application, the lender will originate and service the loan, though it will also sell a 95 percent participation at par to MS Facilities LLC. MSLP loans are 5-year term loans. Interest repayment is deferred for the first year and principal repayment is deferred for two years.

## TISONE's Background

17.     TISONE has been a resident of Collier County, Florida since approximately February 2018. TISONE currently resides at 550 Starboard Drive, Naples, Florida (the "Starboard Residence"). At or around the time TISONE fraudulently applied for PPP, EIDL, and MSLP loans, he resided at 222 Harbour Drive #507, Naples, Florida (the "Harbour Drive Residence").

8

18.     TISONE is a convicted felon and was previously convicted of felony

offenses in New York and Virginia. Specifically, TISONE was previously convicted

of the felony offenses of Attempted Robbery 1st Degree, Assault 2nd Degree,

Attempted Robbery 2nd Degree, and Hindering Prosecution in the County Court of

the State of New York, Nassau County on October 24, 2007. TISONE was also

previously convicted of the felony offense of Possession of a Schedule II Controlled

Substance in the Circuit Court of Loudoun County, Virginia on September 30, 2012.

## Overview of TISONE's Entities

19.     TISONE applied for and sought PPP, EIDL, and MSLP funds for

Limited Liability Companies and a Corporation that were originally incorporated in

Virginia and Delaware. Below is a chart, that summarizes the name of each

company, its date of incorporation, the inactive date, reinstatement date, the

company's officers, and whether it is presently an active company in the State of

Virginia. The information was obtained from records kept and maintained by the

Virginia State Corporation Commission ("VSCC").

| Name | Date of Incorporation | Inactive Date | Reinstatement Date | Officers | Status |
|------|----------------------|---------------|--------------------|----------|--------|
| TEC Ventures, LLC | 1/6/13 | 4/30/15 | 3/30/20 | Albert Tisone<br><br>Daniel Tisone | Active |
| Rub a Dub Eco Wash, LLC | 3/19/14 | 6/30/15 | N/A | Daniel Tisone | Inactive (6/30/15) |

9

| Rub a Dub, LLC | 5/23/16 | 8/31/17 | 3/30/20 | Daniel Tisone | Inactive (8/31/21) |
|---|---|---|---|---|---|
| Rub a Dub Atlantic, LLC | 7/25/17 | 10/31/18 | 7/13/20 | Daniel Tisone | Inactive (10/31/21) |
| Rub a Dub Marines, LLC | 9/19/17 | 1/2/20 | 7/13/20 | Daniel Tisone | Inactive (12/31/21) |

20.     TISONE also previously incorporated Rub a Dub Holdings, Inc. in the State of Delaware on or about August 8, 2017.

21.     In documentation that was submitted to the SBA for an EIDL in November 2020, TISONE described TEC Ventures, LLC ("TEC Ventures") as the main holding company for Rub a Dub, LLC ("Rub a Dub"), Rub a Dub Holdings, Inc. ("Rub a Dub Holdings"), and Rub a Dub Atlantic, LLC ("Rub a Dub Atlantic"). According to a document submitted by TISONE, Rub a Dub and Rub a Dub Atlantic "engaged in the business of construction & contractor for commercial parking structure from which they are enhancing the revenue from their business activity to achieve their strategic goals." Further, in the document, TISONE states Rub a Dub Holdings "provides the services of telematic software and storage hub for autonomous & connected vehicles to put his part to generating more business under TEC Ventures LLC."

22.     TISONE also submitted a description of TEC Ventures as part of his MSLP application in a document titled "Company History," in November 2020. The document described TEC Ventures as "an SME holding company that owns,

10

operates, invests in, and develops a dynamic portfolio of high-growth mixed-use properties in and around Washington, DC and South Florida."

23.     Your Affiant has also conducted an internet search of "Rub A Dub" to determine its online presence and existence. I located and reviewed a description of Rub a Dub Eco Wash on the website Yelp.com, which is a website that allows customers to leave internet reviews of businesses. Rub A Dub Eco Wash's Yelp.com business page contained an "About the Business" section with a description of the business that was written by "Daniel T.," the business owner. There was also a photo of Daniel T. and, based on your Affiants review of the photo, the photo is of TISONE. Rub a Dub Eco Wash is described as an eco-friendly car wash and detailing service. The business's address was 1676 International Dr, Ste 600, McLean, Virginia.

**Overview of Relevant Financial Institutions**

24.     Lender #1 was a federally insured bank based in Virginia. Lender #1 is an SBA approved lender and participated in the PPP as a lender to small businesses. All the fraudulent PPP applications referenced in this affidavit were submitted to Lender #1.

25.     Lender #2 was a federally insured bank based in Virginia. Lender #2 participated in MSLP as a lender. The fraudulent MSLP application referenced in this affidavit was submitted to Lender #2 and the proceeds of the MSLP were deposited at Lender #2. TISONE also maintained a bank account with Lender #2.

11

26. Bank #1 was a federally insured credit union based in Virginia. TISONE maintained a personal checking and savings account at Bank #1.

27. Bank #2 was a federally insured investment bank and financial services company based in New York. TISONE maintained personal and business checking and investment accounts with Bank #2 for himself, TEC Ventures, Rub a Dub, Rub a Dub Holdings, Rub a Dub Atlantic, and Rub a Dub Marines, LLC ("Rub a Dub Marines").

**TISONE's False and Fraudulent PPP Applications (Bank Fraud)**

28. Between April 20, 2020 and March 31, 2021, TISONE submitted a total of five false and fraudulent PPP loan applications (three First Draw and two Second Draw PPP applications) to Lender #1 in violation of 18 U.S.C. § 1344. The five applications, described in detail below, were approved and funded by Lender #1, causing approximately $573,554.17 to be deposited into bank accounts controlled by TISONE. The chart below summarizes the First and Second Draw PPP applications that were submitted by TISONE and funded by Lender #1.

| # | Applicant | Business Name | Application Date | Amount Requested | Loan Amount |
|---|-----------|---------------|------------------|------------------|-------------|
| | | | **First Draw PPP Loans** | | |
| 1 | Daniel Tisone | TEC Ventures LLC | 4/20/20 | $103,900 | 05/11/20 ($103,900) |

12

| 2 | Daniel Tisone | Rub A Dub LLC | 4/22/20 | $130,600 | 05/08/20 ($130,600) |
|---|---|---|---|---|---|
| 3 | Daniel Tisone | Rub A Dub Atlantic LLC | 7/16/20 | $130,600 | 07/31/20 ($130,600) |
| **Second Draw PPP Loans** | | | | | |
| 4 | Daniel Tisone | TEC Ventures LLC | 01/12/21 | $104,954.17 | 02/08/21 ($104,954.17) |
| 5 | Daniel Tisone | Rub A Dub Atlantic LLC | 03/31/2021 | $103,900 | 4/22/21 ($103,900) |
| | | | | | **Total : $573,954.17** |

> ➤ **PPP #1 – TEC Ventures, LLC**

29.     On or about April 20, 2020, TISONE electronically signed and submitted a fraudulent PPP application to Lender #1 for TEC Ventures ("PPP #1"). TISONE was listed as the manager and 100% business owner. The number 703-635-9362 was listed as the business's phone number and the business's email address was listed as Dtisone@me.com. The business's primary address was listed as 7514 Gresham St. Springfield, VA, which is the personal residence and home of TISONE's mother, an individual with initials D.T. The application listed TISONES's address as the Harbour Drive Residence.

13

30.     According to records from VSCC, TEC Ventures was an inactive LLC
from April 30, 2015, up until March 30, 2020. TISONE filed an application with
VSCC for reinstatement of TEC Ventures 21 days before submitting the PPP #1 loan
Application.

31.     The PPP #1 loan application listed the number of employees for TEC
Ventures as five, with an average monthly payroll of $41,565. The application sought
a total of $103,900 in PPP funds. In support of the monthly payroll calculation,
TISONE submitted a fraudulent IRS Form 941 (Employer's Quarterly Federal Tax
Return) with TISONE's signature and dated April 20, 2020, as record of TEC
Venture's payroll for the first quarter of 2020 (January, February, March of 2020).
The IRS Form 941 stated five employees received compensation for the first quarter
of 2020, totaling $123,750.  The IRS confirmed that TEC Ventures did not file an
IRS Form 941 for the first quarter of 2020.

32.     Further, as part of the investigation, I reviewed records from the Florida
Department of Revenue and Virginia Employment Commission, which requires
employers in each respective state to report records of wages paid to employees. The
Florida Department of Revenue and Virginia Employment Commission had no
record of wages paid to be any employees of TEC Ventures during 2020.

33.     As part of the PPP #1 loan application, TISONE was required to make
a number of representations and certification. TISONE represented that "[a]ll SBA
loan proceeds will be used only for business-related purposes as specified in the loan

14

application and consistent with the Paycheck Protection Program Rules."
Additionally, TISONE digitally initialed and falsely certified, among other things,
that the PPP funds acquired from the requested loan would "be used to retain
workers and maintain payroll or make mortgage interest payments, lease payments,
and utility payments." TISONE further certified that he understood that the federal
government could pursue criminal fraud charges if the "funds are knowingly used for
unauthorized purposes." These statements were knowingly false when made
because, as further detailed below, TISONE knowingly used the PPP funds for
unauthorized purposes.

34.     TISONE's false and fraudulent representations on the PPP #1 loan
application caused Lender #1 to approve and fund a PPP loan of $103,900.00. On
May 11, 2020, $103,800[1] in PPP loan funds were deposited into a personal checking
and investment account ending in 38001 with Bank #2 ("Bank #2 account ending in
38001"), held in TISONE's name. The account and TISONE's use of PPP proceeds
will be further discussed in the Misuse of Covid Relief Funds section below.

➢ **PPP #2 - Rub a Dub, LLC**

35.     On or about April 22, 2020, TISONE electronically signed and
submitted a fraudulent PPP application to Lender #1 for Rub a Dub ("PPP #2").
TISONE was listed as the manager and 100% business owner. The number 703-635-
9362 was listed as the business's phone number and the business's email address was

---

[1] For certain PPP loan deposits, Lender #1 applied a $100 service charge.

15

listed as Dtisone@me.com. The business's primary address was listed as 9445
Fairfax Blvd #203, Fairfax, VA, which is a condominium unit associated with
TISONE's father, an individual with initials A.T. The application listed TISONES's
address as the Harbour Drive Residence.

36.     According to records from VSCC, Rub a Dub was an inactive LLC
from August 21, 2017, up until March 30, 2020. TISONE filed an application with
VSCC for reinstatement of Rub a Dub 23 days before submitting the PPP #2 loan
application.

37.     The PPP #2 loan application listed the number of employees for Rub a
Dub as six, with an average monthly payroll of $52,249.34. The application sought a
total of $130,600 in PPP funds. In support of the monthly payroll calculation,
TISONE submitted a fraudulent IRS Form 941 (Employer's Quarterly Federal Tax
Return) with TISONE's signature and without a date, as record of Rub a Dub's
payroll for the first quarter of 2020 (January, February, March of 2020). The IRS
Form 941 stated Rub a Dub's paid compensation to employees for the first quarter of
2020 was $102,830.76. However, the 941 did not provide the number of employees
that received compensation. The IRS confirmed that Rub a Dub did not file an IRS
Form 941 for the first quarter of 2020.

38.     Additionally, as proof of payroll, TISONE submitted a document titled
"Rub a Dub LLC – Paycheck Protection Program Report" which included a
summary of Rub a Dub's payroll in January and February of 2020. The report
purported to be prepared by a third-party internet payroll company based out of San

16

Francisco ("payroll company") that contained the payroll company's logo. As part of the investigation, I confirmed with the payroll company that they did not prepare the report and had no record of the report ever being prepared. Further, the payroll company confirmed that they did not assist in processing payroll for Rub a Dub.

39.     Further, as part of the investigation, I reviewed records from the Florida Department of Revenue and Virginia Employment Commission, which requires employers in each respective state to report records of wages paid to employees. The Florida Department of Revenue and Virginia Employment Commission had no record of wages paid to any employees of Rub a Dub during 2020.

40.     As part of the PPP #2 loan application, TISONE was required to make a number of representations and certification. TISONE represented that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules." Additionally, TISONE digitally initialed and falsely certified, among other things, that the PPP funds acquired from the requested loan would "be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." TISONE further certified that he understood that the federal government could pursue criminal fraud charges if the "funds are knowingly used for unauthorized purposes." These statements were knowingly false when made because, as further detailed below, TISONE knowingly used the PPP funds for unauthorized purposes.

17

41.     TISONE's false and fraudulent representations on the PPP #2 loan
application caused Lender #1 to approve and fund a PPP loan of $130,600.00. On
May 8, 2020, $130,600 in PPP loan funds were deposited into the Bank #2 account
ending in 38001. The account and TISONE's use of PPP proceeds will be further
discussed in the Misuse of Covid Relief Funds section below.

> **PPP #3 – Rub A Dub Atlantic**

42.     On or about July 16, 2020, TISONE electronically signed and
submitted a fraudulent PPP application to Lender #1 for Rub a Dub Atlantic ("PPP
#3"). TISONE was listed as the manager and 100% business owner. The number
703-635-9362 was listed as the business's phone number and the business's email
address was listed as Dtisone@me.com. The business's primary address was listed as
1676 International Dr, McLean, VA 22101, which is a 13-story office building in the
Northern Virginia/DC Metro area. The application listed TISONES's address as the
Harbour Drive Residence.

43.     According to records from VSCC, Rub a Dub Atlantic was an inactive
LLC from October 31, 2018, up until July 13, 2020. TISONE filed an application
with VSCC for reinstatement of Rub a Dub Atlantic three days before submitting the
PPP #3 loan application.

44.     The PPP #3 loan application listed the number of employees for Rub a
Dub Atlantic as six, with an average monthly payroll of $52,249.34 (the same as
PPP# 2). The application sought a total of $130,600 in PPP funds (the same as PPP#

18

2). In support of the monthly payroll calculation, TISONE submitted a fraudulent IRS Form 941 (Employer's Quarterly Federal Tax Return) with TISONE's signature and without a date, as record of Rub a Dub's payroll for the first quarter of 2020 (January, February, March of 2020). The IRS Form 941 stated Rub a Dub Atlantic paid a total of $102,830 in employee compensation in the first quarter of 2020. However, the tax document did not state the number of employees that received compensation. The IRS confirmed that Rub a Dub Atlantic did not file an IRS Form 941 for the first quarter of 2020.

45.     Additionally, as proof of payroll, TISONE submitted a document titled "Rub a Dub Atlantic LLC – Paycheck Protection Program Report" which included a summary of Rub a Dub's payroll in January and February of 2020. The monthly payroll information on the report was the same as what was submitted for PPP #2. The report purported to be prepared by the payroll company and contained the payroll company's logo. As part of the investigation, I confirmed with the payroll company that they did not prepare the report and had no record of the report ever being prepared. Further, the payroll company confirmed that they did not assist in processing payroll for Rub a Dub Atlantic.

46.     Further, as part of the investigation, I reviewed records from the Florida Department of Revenue and Virginia Employment Commission, which requires employers in each respective state to report records of wages paid to employees. The

19

Florida Department of Revenue and Virginia Employment Commission had no record of wages paid to any employees of Rub a Dub Atlantic during 2020.

47.     As part of the PPP Loan #3 application, TISONE was required to make a number of representations and certification. TISONE represented that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules." Additionally, TISONE digitally initialed and falsely certified, among other things, that the PPP funds acquired from the requested loan would "be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." TISONE further certified that he understood that the federal government could pursue criminal fraud charges if the "funds are knowingly used for unauthorized purposes." These statements were knowingly false when made because, as further detailed below, TISONE knowingly used the PPP funds for unauthorized purposes.

48.     TISONE's false and fraudulent representations on the PPP #3 loan application caused Lender #1 to approve and fund a PPP loan of $130,600.00. On July 31, 2020, $130,500 in PPP loan funds were deposited into the Bank #2 account ending in 38001. On the same date, TISONE transferred the PPP loan funds to a business checking and investment account ending in 39000 with Bank #2 ("Bank #2 account ending in 39000"). TISONE was the sole signatory on the Bank #2 account ending in 39000. The account was set up to permit its account holder to use the

account as a primary investment account, while also enjoying traditional checking account functions. The account and TISONE's use of PPP proceeds will be further discussed in the Misuse of Covid Relief Funds section below.

> ➤ **PPP #4 – TEC Ventures LLC (Second Draw)**

49.     On or about January 21, 2021, TISONE electronically signed and submitted a fraudulent Second Draw PPP application to Lender #1 for TEC Ventures ("PPP #4"). TISONE was listed as the manager and 100% business owner. The application contained some of the same identifying information as the First Draw application for PPP#1, except the email for the business was changed to info@tecventuresllc.com.

50.     The PPP#4 loan application listed the number of employees for TEC Ventures as four, with an average monthly payroll of $41,981.67. The application sought a total of $104,954.17 in Second Draw PPP funds. Unique to the Second Draw PPP application, TEC Ventures was required to show a reduction in gross receipts of more than 25% to qualify for a Second Draw loan. To do this, the applicant business was required to identify the 2020 quarter meeting this requirement, identify the reference quarter, and provide the gross receipt amounts for both quarters. A portion of TEC Venture's PPP #4 application that contains this information is pictured below.

21

| Purpose of the loan (select all that apply): | ✓ Payroll Costs | | ✓ Rent / Mortgage Interest | | ✓ Utilities | | ✓ Covered Operations Expenditures |
|---|---|---|---|---|---|---|---|
| | ☐ Covered Property Damage | | ✓ Covered Supplier Costs | | ✓ Covered Worker Protection Expenditures | | ☐ Other (explain) |
| **PPP First Draw SBA Loan Number:** | 67325272-07 | | | | | | |
| **Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or** | | 2020 Quarter (e.g., 2Q 2020): | 2Q 2020 | | Reference Quarter (e.g., 2Q 2019): | | 2Q 2019 |
| **less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request):** | | Gross Receipts: | $59431.49 | | Gross Receipts | | $848834.33 |

51.    As detailed in a portion of the PPP #4 application shown above,

TISONE submitted the second quarter of 2020 as a period in which gross receipts for

TEC Ventures decreased by more than 25%. TISONE stated in the application that

the gross receipts for that quarter were $59,431.49. TISONE submitted the second

quarter of 2019 as TEC Venture's reference quarter and stated in the application that

the gross receipts for that quarter were $848,834.33. Moreover, TISONE submitted a

fraudulent profit and loss statement for TEC Ventures for the period of April 2 to

July 31, 2020. It should be noted that the second quarter of a given year would run

from April 1st through June 30th.

52.    Based on your Affiant's training and experience, there are entries on the

profit and loss statement that are consistent with fraud. The first is that TISONE

claimed TEC Ventures paid a total of $159,409.44 in salary and wage expenses

between April 2 and July 31, 2020. See the relevant portion of the profit and loss

statement below.

22

| | | | |
|---|---|---|---|
| 7650 Travel expense | | 718.88 | -100.00 % |
| 7700 Salaries & Wages expense | 159,409.44 | | |
| 7750 Payroll Tax | 11,880.95 | | |
| Total Expenses | $178,623.48 | $6,190.39 | 2,785.50 % |
| NET OPERATING INCOME | $ -132,534.83 | $842,043.94 | -115.74 % |

53.     The column on the left side (pictured above) is the April 2 to July 31,
2020 period. The column in the middle is the reference period in 2019. It should be
noted that TISONE does not include any salary and wage expenses for the reference
period in 2019. Your Affiant's review of TISONE's personal and business bank
accounts for 2020, showed no record of payroll expenses for TEC Ventures during
the period identified above. Further, the Florida Department of Revenue and
Virginia Employment Commission had no record of wages paid to be any employees
of TEC Ventures during 2020.

54.     Another entry in the profit and loss statement that your Affiant found
was inconsistent and evidence of fraud was that the profit and loss statement
indicated TEC Ventures had a total cost of goods sold of $600 and total income of
$848,834.33 in the 2019 reference period, but a cost of goods sold of $13,342.84 and
total income of $59,431.49 during the same period in 2020. The proportional
increase in cost of goods sold from 2019 to 2020, while also suffering a substantial
decrease in total income is inconsistent with the claim of decreased business. That,
taken with the entry of no payroll expenses in 2019, is further evidence that TISONE
provided a fraudulent profit and loss statement for his Second Draw PPP loan. See
the relevant portion of the profit and loss statement pictured below.

23

| | TOTAL | | |
| | APR 2 - JUL 31, 2020 | APR 2 - JUL 31, 2019 (PY) | % CHANGE |
|---|---|---|---|
| Income | | | |
| 4000 Revenue | 59,431.49 | 848,834.33 | -93.00 % |
| Total Income | $59,431.49 | $848,834.33 | -93.00 % |
| Cost of Goods Sold | | | |
| 5020 Contractor Service | 13,342.84 | 600.00 | 2,123.81 % |
| Total Cost of Goods Sold | $13,342.84 | $600.00 | 2,123.81 % |
| GROSS PROFIT | $46,088.65 | $848,234.33 | -94.57 % |

55.     Your Affiant's review of TISONE's personal and business account records for 2019 showed no records of substantial deposits or inflows that would support the representation of $848,834.33 in income during the period described above in the profit and loss statement submitted by TISONE.

56.     A Second Draw PPP loan applicant was also required to make a number of certifications. In the Second Draw PPP application for PPP #4, TISONE initialed and falsely certified that "[t]he Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses." As detailed below, TISONE did not use the First Draw PPP loan (PPP #1) for eligible expenses.

57.     TISONE's false and fraudulent representations on the PPP #4 loan application caused Lender #1 to approve and fund a Second Draw PPP loan in the amount of $104,954.17. On February 8, 2021, $104,854.17 in Second Draw PPP loan funds were deposited into a business investment and checking account ending in 39323 with Bank #2 ("Bank #2 account ending in 39323"). The account was a

24

business account with the name TEC Ventures c/o Daniel Tisone. TISONE was the sole signatory on the Bank #2 account ending in 39323. The account and TISONE's use of PPP proceeds will be further discussed in the Misuse of Covid Relief Funds section below.

> **PPP #5 – Rub A Dub Atlantic (Second Draw)**

58.     On or about January 21, 2021, TISONE electronically signed and submitted a fraudulent Second Draw PPP application to Lender #1 for Rub a Dub Atlantic ("PPP #5"). TISONE was listed as the manager and 100% business owner. The application contained the same identifying information as the First Draw application for PPP #3.

59.     The PPP #5 loan application listed the number of employees for Rub a Dub Atlantic as four, with an average monthly payroll of $41,565. The application sought a total of $103,900 in Second Draw PPP funds. Records from the Florida Department of Revenue and Virginia Employment Commission showed no record of any wages being paid to employees of Rub a Dub Atlantic in the States of Florida or Virginia during 2020 or 2021. Additionally, your Affiant has reviewed TISONE's personal and business bank records, as well as payroll company records, and I have found no records of payroll being paid to any employees of Rub a Dub Atlantic. The payroll amount and number of employees submitted in the Second Draw PPP #5 application are false.

25

60.     Again, just like PPP #4, TISONE used the second quarter of 2019 and the second quarter of 2020 to establish a greater than 25% reduction in gross receipts. The PPP #5 loan application stated Rub a Dub Atlantic had gross receipts of $227,360 in the second quarter of 2019 and gross receipts of $0.00 in the second quarter of 2020. Additionally, and unlike the Second Draw application for PPP #4, TISONE did not submit supporting documentation, like a profit and loss statement, for the 2019 and 2020 gross receipt figures. Such supporting documentation was not required by the SBA for Second Draw PPP loan applications that requested less than $150,000.

61.     The gross receipts figure submitted by TISONE for the second quarter of 2019 is false. Your Affiant has reviewed TISONE's personal and business bank account records for the year of 2019. A review of those records showed no evidence of $227,600 in gross receipts during the second quarter of 2019.

62.     A Second Draw PPP loan applicant was also required to make a number of certifications. In the Second Draw PPP application for PPP #5, TISONE initialed and falsely certified that "[t]he Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses." As detailed below, TISONE does not use the First Draw PPP loan (PPP #3) for eligible expenses.

26

63.    TISONE also falsely certified that the Second Draw PPP loan funds would be used "to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures." TISONE further certified that if the funds were knowingly used for unauthorized purposes, the federal government could hold him legally liable, such as for charges of fraud. As detailed below, TISONE knowingly used PPP #5 loan funds for unauthorized purposes.

64.    TISONE's false and fraudulent representations on the PPP #5 loan application caused Lender #1 to approve and fund a Second Draw PPP loan in the amount of $103,900. On April 22, 2021, $103,800 in Second Draw PPP loan funds were deposited into the Bank #2 account ending in 39000. The account and TISONE's use of PPP proceeds will be further discussed in the Misuse of Covid Relief Funds section below.

**TISONE's False and Fraudulent EIDL Applications (Wire Fraud)**

65.    Between March 2020 and November 2020, TISONE submitted a total of five false and fraudulent EIDL applications to the SBA in violation of 18 U.S.C. § 1343. Below is a chart that summarizes each EIDL application.

| # | Applicant(s) | Business | # of Employees | On or About Application Date | Approx. Loan Amount | EIDG | Status |
|---|---|---|---|---|---|---|---|
| | APPROVED EIDL LOANS | | | | | | |
| 1 | Daniel Tisone | Rub a Dub Holdings, Inc. (C Corp) | 6 | 3/30/2020 | $150,000 | Y ($6,000) | Funded (5/21/2020) |
| 2 | Daniel Tisone | Rub a Dub Atlantic, LLC | 5 | 10/12/2020 | $150,000 | N | Funded (10/22/2020) |
| 3 | Daniel Tisone | Rub a Dub Marines, LLC dba Rub a Dub Eco Wash | 4 | 11/9/2020 | $150,000 | N | Funded (11/19/2020) |
| | DECLINED EIDL APPLICATIONS | | | | | | |
| 1 | Daniel Tisone | Rub a Dub, LLC | 12 | 4/3/2020 | $150,000 | Req. | Declined (11/6/2020) |
| 2 | Daniel Tisone | Rub a Dub, LLC | 12 | 4/15/2020 | $500,000 | Req. | Declined (5/26/2020) |
| | | | | | | | Total: $456,000 |

66.    Three of the applications, described in detail below, were approved and funded by the SBA. The SBA deposited approximately $455,700[2] in EIDL and EIDG funds into bank accounts controlled by TISONE. The two EIDL applications

---

[2] The SBA charged a $100 processing fee for each EIDL deposit. So, while the EIDL was for $150,000, $149,900 of EIDL proceeds were deposited into accounts controlled by TISONE.

that were declined will be referenced in this affidavit because, during the EIDL review process, TISONE submitted corporate tax returns and financial statements that contained gross revenue, wage, and cost of goods sold amounts that conflicted with representations TISONE made in his approved EIDL applications.

> ➢ **EIDL #1 – Rub A Dub Holdings, Inc.**

67.     On or about March 30, 2020, TISONE electronically submitted a fraudulent EIDL application to the SBA for Rub A Dub Holdings, a C-corporation ("EIDL #1"). The application was submitted from an Internet Protocol ("IP") address in Collier County, FL.  According to the application, Rub a Dub Holdings was established on August 25, 2017. TISONE was listed as the 100% owner. The address for the business was listed as 1676 International Dr. McLean, VA (same business address as PPP #3), and the email address was listed as rubadubecowash@gmail.com. The business phone number contained in the EIDL application was 571-336-7059. The business owner's mobile number was listed as 703-635-9362 and the email was listed as Dtisone@me.com. The application described Rub a Dub Holding's business industry as "construction & contractors," and the business category as "construction contractors."

68.     In the EIDL application, TISONE falsely represented Rub A Dub Holding's gross revenue to be $1,500,000 and cost of goods sold to be $460,000 for the year period preceding January 31, 2020. The application sought a $150,000 EIDL and a $6,000 EIDG, which was based on a claim that the business had six employees. The SBA did not require the applicant to submit documentation in

29

support of these represented figures. Records from the Florida Department of Revenue and Virginia Employment Commission revealed no record of wages being paid to employees of Rub a Dub Holdings in the States of Florida and Virginia during 2019 and 2020.

69.     Additionally, your Affiant has reviewed a Form 1120 U.S. Corporation Income Tax Return filed by TISONE for TEC Ventures for the 2019 tax year. The corporate tax return was filed as a consolidated return and contained the tax information for subsidiary corporations, which included Rub a Dub Holdings, Rub a Dub, and Rub a Dub Atlantic. The tax return indicated that in 2019 the total cost of goods sold for TEC Ventures and its subsidiary corporations, including Rub a Dub Holdings, was $2,470 and not $460,000 as stated in the EIDL #1 application. Additionally, the tax return contained no salary and wages for 2019. TISONE's EIDL application representations that the cost of goods sold for Rub a Dub Holdings were $460,000 in 2019 and that the business had six employees were false.

70.     On the EIDL #1 application, TISONE failed to disclose his criminal history which would have automatically disqualified him as a EIDL borrower. Specifically, the application asked the applicant if he/she had, for any criminal offense other than a minor vehicle violation, been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgement). The EIDL application indicated TISONE responded "No." As previously discussed, TISONE has been

30

convicted of felony offenses in the States of New York and Virginia. According to the SBA, had TISONE truthfully represented that he was a convicted felon, the EIDL application would have been denied.

71.     TISONE's false and fraudulent representations on the EIDL #1 application caused the SBA to approve and fund a $150,000 EIDL. On May 22, 2020, the SBA deposited $149,900 in EIDL funds and $6,000 in EIDG funds into the Bank #2 account ending in 38001.  The account and TISONE's use of EIDL funds will be further discussed in the Misuse of Covid Relief Funds section below.

  ➢ **EIDL #2 – Rub A Dub Atlantic, LLC**

72.     On or about October 12, 2020, TISONE electronically submitted a fraudulent EIDL application to the SBA for Rub a Dub Atlantic ("EIDL #2"). According to the application, Rub a Dub Atlantic was established on September 19, 2017. TISONE was listed as the 100% owner. The address for the business was listed as 360 NW 27th Street, Miami, FL, and the email address was listed as daniel@rubadub.com. Further investigation of the business address revealed it to be the address for WeWork, a business which allows individuals and companies to rent shared office space by the hour, day, month, or year. The business phone number contained in the EIDL application was 855-681-999. The business owner's mobile number was listed as 703-635-9362 and the email was listed as Dtisone@rubadub.com. The application described Rub a Dub Atlantic's business industry as "transportation," and the business category as "None of the below."

31

73.     In the EIDL application, TISONE falsely represented Rub A Dub
Atlantic's gross revenue to be $632,000 and cost of goods sold to be $248,000 for the
year period preceding January 31, 2020. The application sought a $150,000 EIDL.
The application also claimed Rub a Dub Atlantic had six employees. Records from
the Florida Department of Revenue and Virginia Employment Commission revealed
no record of wages being paid to employees of Rub a Dub Atlantic in the States of
Florida and Virginia during 2019 and 2020.

74.     Your Affiant has also reviewed the 2019 TEC Ventures Form 1120 U.S.
Corporation Income Tax Return, which included Rub a Dub Atlantic as a subsidiary
corporation in the tax filing. The tax return indicated that in 2019 the total cost of
goods sold for TEC Ventures and its subsidiary corporations, including Rub a Dub
Atlantic, was $2,470 and not $248,000 as stated in the EIDL #2 application.
Additionally, the tax return contained no salary and wages for 2019. Moreover,
combining the gross revenue falsely represented by TISONE in EIDL #1 and EIDL
#2 would equal a sum in gross revenues of $2,132,000 for two of TEC Venture's
subsidiary corporations in 2019. That number exceeds the $1,717,701 in gross
receipts or sales that is listed in TISONE's 2019 Corporate Income Tax Return. Your
Affiants review of TISONE's personal and business bank records also showed no
evidence of deposits that are consistent with TISONE's gross revenue
representations.   The gross revenue, cost of goods sold, and employment
representations made by TISONE in the EIDL #2 application were false.

75. TISONE's false and fraudulent representations on the EIDL #2 application caused the SBA to approve and fund a $150,000 EIDL. On October 23, 2020, the SBA deposited $149,900 in EIDL funds into the Bank #2 account ending in 39000. The account and TISONE's use of EIDL funds will be further discussed in the Misuse of Covid Relief Funds section below.

> ➢ **EIDL # 3 – Rub A Dub Marines, LLC dba Rub a Dub Eco Wash**

76. On or about November 9, 2020, TISONE electronically submitted a fraudulent EIDL application to the SBA for Rub a Dub Marines dba Rub a Dub Eco Wash ("EIDL #3"). The application was submitted from an IP address in Collier County, FL. According to the application, Rub a Dub Marines was established on September 19, 2017. TISONE was listed as the 100% owner. The address for the business was listed as 9445 Fairfax Blvd, Fairfax, VA, and the email address was listed as RADMarines@rubadub.com. The business phone number contained in the EIDL application was 571-336-7059. The business owner's mobile number was listed as 703-635-9362 and the email was listed as RADMarines@rubadub.com. The application described Rub a Dub Marines's business industry as "automotive repair," and the business category as "car wash."

77. In the EIDL application, TISONE falsely represented Rub A Dub Marines's gross revenue to be $362,000 and cost of goods sold to be $47,000 for the year period preceding January 31, 2020. The application sought a $150,000 EIDL. The application also claimed Rub a Dub Marines had four employees. Records from the Florida Department of Revenue and Virginia Employment Commission revealed

33

no record of wages being paid to employees of Rub a Dub Marines in the States of Florida and Virginia during 2019 and 2020.

78.     During the review of TISONE's EIDL #3 application, the SBA requested various supporting documents. These supporting documents included, among others, Rub a Dub Marines's business bank statement and a copy of a business lease and tax return as proof of the business's existence. In response, on or about November 14, 2020, TISONE submitted copies of property use agreements and a lease agreement to the SBA as proof of business operations. The documents purported to be executed with a real estate investment trust (REIT) that owns, develops, leases, and manages more than 100 commercial properties and is headquartered in Philadelphia, PA (the "REIT"). As part of the investigation, your Affiant spoke with a representative with the REIT that confirmed the lease is not a form used by the REIT and that the REIT had no record of the lease in their system. Additionally, the lease is signed by an individual with the initials S.B. on behalf of the REIT and the signature is dated June 1, 2015. Your Affiant confirmed that S.B. stopped working for the REIT in 2014 and was not working for the REIT on June 1, 2015. Therefore, TISONE submitted a fraudulent lease agreement to the SBA as proof of Rub a Dub Marines's existence.

79.     Additionally, TISONE submitted a false and fraudulent tax return to the SBA during the EIDL #3 application process. On or about November 14, 2020, the SBA spoke with TISONE on the phone and requested he submit a 1040 Schedule C. On or about November 16, 2020, TISONE electronically submitted a 2019

34

individual tax return and a 2019 1040 Schedule C for Rub a Dub Marines. Of note, the tax documents were electronically signed by TISONE and dated November 16, 2020, two days after the SBA requested that he submit a 1040 Schedule C. The 2019 1040 Schedule C listed the gross receipts for Rub a Dub Marines as $369,188 and the cost of goods sold as $47,133. The Schedule C also listed the gross income for Rub a Dub Marines as $313,682 and total expenses as $313,400. Rub a Dub Marines's income was therefore listed as $282 for the 2019 tax year. A review of TISONE's personal and business bank records showed no record of deposits that are consistent with over $360,000 in gross receipts in 2019. Additionally, there were no records of any withdrawals or debits that are consistent with $313,400 in expenses in 2019.

80.     TISONE's false and fraudulent representations on the EIDL #3 application and in supporting documentation caused the SBA to approve and fund a $150,000 EIDL. On November 20, 2020, the SBA deposited $149,900 in EIDL funds into a business checking and investment account ending in 39171 at Bank #2 ("Bank #2 account ending in 39171"). The account was opened by TISONE on October 27, 2020, in the name of Rub a Dub Marines LLC dba Rub a Dub Eco Wash. TISONE was the sole signatory on the account. The account and TISONE's use of EIDL funds will be further discussed in the Misuse of Covid Relief Funds section below.

## TISONE's False and Fraudulent MSLP Application for TEC Ventures, LLC (Bank Fraud)

81.     On or about November 9, 2020, TEC Ventures submitted a fraudulent MSLP application to Lender #2, a federally insured bank, in violation of 18 U.S.C.

35

§ 1344. The Commercial Loan Application requested $9,000,000.00 through the Main Street Priority Loan Facility ("Priority Loan Facility"). The application named TEC Ventures LLC as the borrower and was signed by TISONE. The application indicated that the business's street address was 1775 Tysons Blvd 5th Floor, McLean, Virginia, 22102, while the business's mailing address and principal office address was the Harbour Drive Residence.

82.     In support of the application, TISONE submitted a document called "Daniel Tisone Bio." This document listed a name of "Daniel Joseph Tisone" and a birth date of April 2, 1987. Likewise, TISONE submitted his Florida driver's license. The address listed on the driver's license was the Harbour Drive Residence, which was also listed on this loan application.

83.     In further support of the application, TISONE provided Lender #2 with materials describing TEC Ventures's business activities and the purpose of the loan. The documents generally describe TEC Ventures as a property developer. For example, a document titled "Company History" called TEC Ventures a "holding company that owns, operates, invests in, and develops a dynamic portfolio of high-growth mixed-use properties in and around Washington, DC and South Florida." The document also claimed that "TEC Ventures LLC builds tech enabled property amenities for use by both consumers and Fortune 500 mobility companies" and that "TEC Venture's portfolio currently comprises of over 200 high-quality office, multifamily and retail assets." In addition, a document called "Key Customers & Suppliers" claimed that TEC Ventures partnered with landlords and parking

36

operators to offer "amenities" to tenants and "fleet" companies that regularly used their parking garages. These purported services involved "integrating" TEC Venture's "technology" into automobiles built by various major manufacturers. Further, a document titled "MSLP Use of Loan Proceeds" represented that TEC Ventures would use most of the requested loan amount to purchase and improve real estate.

84.    TISONE also submitted information regarding TEC Ventures's finances in support of the application. Specifically, he submitted TEC Ventures's corporate income tax returns for the years 2018 and 2019, as well as "Profit & Loss by Business" statements for 2018, 2019, and the first nine months of 2020. These materials reported significant revenues earned and wages paid between 2018 and 2020. Thus, the application created the impression that TEC Ventures's activities had generated revenues and had required paid employees. Your Affiant's review of TEC Ventures's and TISONE's personal and business bank records for this period of time showed no evidence of incoming deposits or credits consistent with the gross receipts or sales contained in TEC Ventures corporate tax filings. Also, in TEC Ventures's 2019 corporate tax filing, the business declared $1,666,744 in depreciation for machinery and equipment purchased in 2019. A review of TEC Ventures's and TISONE's personal and business bank records showed no record of the purchase of $1,666,744 in machinery and or equipment.  Additionally, it should be noted that TEC Ventures's 2018 and 2019 corporate tax filings were filed on or around October

37

30, 2020, 10 days before TEC Ventures submitted its MSLP loan application to
Lender #2.

85.     In reliance on these representations, Lender #2 created a credit
memorandum that recommended issuing a loan of $1,500,000.00 to TEC Ventures
under the Priority Loan Facility. The memorandum explained that this amount was
approximately six times TEC Ventures's EBITDA for 2019. The memorandum
summarized TEC Ventures's financial information, relying on tax returns as the
"source of financials" for 2018 and 2019 and "internal" documents as the source for
the first nine months of 2020. The 2020 revenue referenced in the credit
memorandum matched the amount reported in the TEC Ventures's Profit & Loss
statement submitted by TISONE for January-September 2020. The credit
memorandum also repeated much of the information from TEC Ventures's
application regarding the nature of the business, its clientele, the holdings of its
portfolio, its need to pivot to residential real estate during the pandemic, and the
representation that TEC Ventures would use the proceeds for working capital and
operating expenses.

86.     On or about November 20, 2020, Lender #2 sent a Commercial Loan
Commitment Letter to TEC Ventures. The letter stated that Lender #2 had approved
a loan to TEC Ventures in the amount of $1,500,000.00, subject to various terms and
conditions. On November 23, 2020, the letter was "agreed and accepted by" TEC
Ventures and signed by "Daniel Tisone, president," with TISONE's signature.

87. On November 30, 2020, Lender #2 issued a "Loan Summary & Approval" that formally approved a loan to TEC Ventures in the amount of $1,500,000.00. After processing fees, Lender #2 deposited $1,476,093.00 into TEC Ventures's Lender #2 business account ending in 2616 ("Lender #2 account ending in 2616"). This account was opened on December 3, 2020, with TISONE and his father, A.T., listed as authorized signers. The use of the MSLP funds will be further discussed in the Misuse of Covid Relief Funds section below.

88. On December 10, 2020, Lender #2 and TEC Ventures entered a signed and notarized Loan Agreement providing that Lender #2 would loan $1,500,000.00 to TEC Ventures. In your Affiant's experience, it is not uncommon for banks to fund loans before loan agreements are signed. The agreement was signed by TISONE. TISONE's title on the agreement was "Manager and Sole Member." The agreement was also signed by the senior vice president of Lender #2.

89. The signed and notarized Loan Agreement contained a number of "Additional Covenants of Borrower." One such covenant, titled "Negative Pledge," was that TEC Ventures would not incur liens on any of its assets:

> Borrower will not, nor will it permit any subsidiary to, create, incur, assume, or suffer to exist any lien upon any of its property, assets, or revenues, whether now owned or hereafter acquired, securing any debt for borrowed money or any obligations evidenced by a bond, debenture, note loan agreement, or other similar instrument, or any guaranty of the foregoing, other than liens securing the Loan.

90. The parties additionally agreed that TEC Ventures "shall not assign this Agreement or the moneys to be advanced hereunder or convey, assign, pledge, encumber or mortgage any part of the collateral for the Loan without the prior written consent of [Lender #2]."

91. On December 11, 2020, TEC Ventures provided certifications and covenants required of all borrowers through the Priority Loan Facility. The certifications and covenants were signed by TISONE, whose title was "CEO." It was also signed by A.T., whose title was "CFO." Among other certifications, TEC Ventures certified that the financial records it had provided to Lender #2 "fairly present, in all material respects, the financial condition of such entities for the period covered thereby . . ., consistently applied, and that such adjusted EBITDA calculations are true and correct in all material respects." On or about December 24, 2020, in reliance on TEC Ventures's certifications and covenants, MS Facilities LLC purchased 95% of the loan participation from Lender #2, for a total purchase amount of $1,425,000.00.

92. Among other types of financial disclosures, the Loan Agreement required TEC Ventures to submit its federal tax return to Lender #2 by May 1 of each year. On or about October 31, 2021, TISONE emailed Lender #2 a 2020 tax return for Daniel Tisone. Schedule C of the tax return, titled "Profit or Loss from Business," purported to show income and receipts for TEC Ventures. It should be noted that for tax years 2018 and 2019, TEC Ventures reported its taxes in the form of an 1120 corporate tax filing for both TEC Ventures and its subsidiary

40

corporations. TISONE, for tax year 2020, changed TEC Venture's tax filing to a 1040 Schedule C, which would be consistent with the tax filing of a sole proprietorship.

93.     Much of the information that TISONE supplied, and upon which Lender #2 relied, was false, misleading, and fraudulent. In addition, some of TEC Ventures's certifications and covenants, which TISONE signed, were false and fraudulent. Most notably, TISONE 1) falsified TEC Ventures's revenue totals between January and September 2020, 2) falsified TEC Ventures's reported wage payments, 3) falsely certified TEC Ventures's eligibility to participate in the Priority Loan Facility, 4) falsely promised that TEC Ventures would not create liens on its assets or pledge MSLP funds as collateral for additional loans, and 5) after the loan was approved and entered the MSLP, falsified TEC Ventures's revenue totals on a purported 2020 tax return.

### TISONE's Misuse of COVID Relief Funds
### (Illegal Monetary Transactions)

94.     Between May 8, 2020 and April 22, 2021, a total of approximately $2,505,347.17 in COVID relief loan funds were deposited into financial accounts that TISONE controlled and maintained. The details of which accounts received COVID relief funds are summarized below.

41

| | | | Account Overview | |
|---|---|---|---|---|
| **Account** | **Date Opened** | **Signer(s)** | **PPP/EIDL/EIDG/MSLP** | **Total Deposited** |
| Bank #2 38001 | 02/19/2019 | Daniel Tisone | PPP #1, PPP #2, PPP #3, EIDL #1, EIDG | $520,800.00 |
| Bank #2 39000 | 07/30/2020 | Daniel Tisone | PPP #5, EIDL #2 | $253,700.00 |
| Bank #2 39171 | 10/27/2020 | Daniel Tisone | EIDL #3 | $149,900.00 |
| Lender #2 2616 | 12/03/2020 | Daniel Tisone  A.T. | MSLP | $1,476,093.00 |
| Bank #2 39323 | 12/29/2020 | Daniel Tisone | PPP #4 | $104,854.17 |
| | | | **Total** | **$2,505,347.17** |

### Bank#2 Account Ending in 38001

95.     On or about February 19, 2019, Bank #2 account ending in 38001 and titled "Daniel Tisone" was opened at Bank #2, with TISONE listed as the sole signatory on the account. The account could be used as both a personal checking account and as a primary brokerage investment account to purchase stocks and other securities. Bank #2 account ending in 38001 received approximately $520,800 in PPP, EIDL, and EIDG funds. Prior to the initial deposit of PPP #2 funds on May 8, 2020, the account had a balance of $0.00.

96.     Between May 8, 2020 and July 31, 2020, 96% of the total funds received into the account consisted of COVID relief funds received either directly and indirectly. Outflows during the same period consisted of the purchase of

stocks/securities (50%) and inter-account transfers (50%). For instance, after

TISONE received $130,600 in PPP #2 funds on May 8, 2020, and $103,800 in

PPP#1 funds on May 21, 2020, TISONE used the funds to purchase bulk shares of

stock. Specifically, between May 18, 2020 and May 21, 2020, TISONE misused PPP

funds to conduct four (4) separate bulk stock share purchase transactions in excess of

$10,000 in violation of 18 U.S.C. § 1957. The dates and amounts are summarized as

follows:

| Date | Amount |
|------|--------|
| 05/18/2020 | $18,082.90 |
| 05/18/2020 | $19,653.60 |
| 05/19/2020 | $16,080.00 |
| 05/21/2020 | $25,000.00 |

97.     On May 22, 2020, the balance of Bank #2 account ending in 38001 was

$85,853.50, which consisted of remaining funds from PPP #1 and PPP #2. On May

22, 2020, two deposits from the SBA were received totaling $155,900. This was the

receipt of EIDL #1 funds and EIDG funds. Between May 27, 2020 and July 16,

2020, the PPP and EIDL funds in Bank #2 account ending in 38001 were used to

conduct nine (9) separate bulk stock share and securities purchase transactions

totaling $192,024.03. The date and amount of each transaction, 8 of which were in

excess of $10,000 in violation of 18 U.S.C. § 1957, are summarized as follows:

43

| Date | Amount |
|------|--------|
| 05/27/2020 | $24,887.10 |
| 05/27/2020 | $25,000.00 |
| 05/29/2020 | $7,533.02 |
| 05/29/2020 | $13,067.95 |
| 06/04/2020 | $25,352.16 |
| 06/05/2020 | $22,454.80 |
| 06/11/2020 | $25,000.00 |
| 06/30/2020 | $25,000.00 |
| 7/16/2020 | $23,729.00 |

98.     On July 31, 2020, PPP #3 funds in the amount of $130,500 were

deposited into Bank #2 account ending in 38001 for Rub a Dub Atlantic. On the

same date, TISONE transferred the funds to Bank #2 account ending in 39000.

TISONE's use of the PPP #3 funds are detailed below.

### Bank #2 Account Ending in 39000

99.     On or about July 30, 2020, Bank #2 account ending in 39000 and titled

"RUBADUB ATLANTIC LLC" was opened at Bank #2, with TISONE listed as

the sole signatory on the account. The account could be used as both a business

checking account and as a primary brokerage investment account to purchase stocks

and other securities. On July 31, 2020, Bank #2 account ending in 39001 received an

44

inter-account transfer of $130,500 in PPP #3 funds from Bank #2 account ending in 38001. Prior to the transfer of PPP #3 funds, the account had a balance of $0.00.

100.    Upon receipt of the PPP #3 funds transfer, TISONE conducted two transactions of bulk stock share purchases for more than $10,000, in violation of 18 U.S.C. § 1957. The first, was on August 26, 2020, in the amount of $15,000, and the second was on September 30, 2020, also in the amount of $15,000. On October 9, 2020, TISONE misused $15,632.89 in PPP #3 funds to pay off the balance on a personal credit card, also in violation of 18 U.S.C. § 1957. A review of the personal credit card's statements revealed TISONE primarily uses the card for personal use, to include restaurant, retail, and grocery purchases.

101.    On October 23, 2020, $149,900 in EIDL #2 funds for Rub a Dub Atlantic were deposited by the SBA into Bank #2 account ending in 39000. Prior to the receipt of the EIDL #2 funds, the account balance was $0.52. The EIDL #2 funds were depleted from the account by November 3, 2020. On October 30, 2020, $10,000 of the funds were used to purchase investment securities.

102.    On November 3, 2020, TISONE made an inter-account transfer of EIDL #2 funds to Bank #2 account ending in 39178 in the amount of $138,839. Bank #2 account ending in 39178, titled "796 Ketch LLC," was a business checking and investment account that was opened on November 2, 2020. TISONE was the account's sole signatory. Prior to the funds transfer, the account's balance was $0.00.

103.    On November 5, 2020, TISONE made another inter-account transfer. This time, TISONE transferred $138,839 (EIDL #2 funds) from Bank #2 account

ending in 39178 to Bank #2 account ending in 38001. An email from TISONE to a representative of Bank #2 on the same date, detailed the purpose of the inter-account transfer was to fund a wire transfer from Bank #2 account ending in 38001 for the purchase of a property in Naples, FL. On the same date, $185,000 (which consisted of $138,839 in EIDL #2 funds) was wired from Bank #2 account ending in 38001 to a law firm for the purchase of a property located at 796 Ketch Dr. Naples, FL ("Ketch Residence").

104.    On April 22, 2021, $103,800 in Second Draw PPP #5 funds for Rub a Dub Atlantic were deposited into Bank #2 account ending 39000. Prior to the receipt of the PPP #5 funds, the account balance was $17.21. On May 4, 2021 and June 4, 2021, TISONE used $12,819.14 and $15,619.51 in PPP #5 funds to pay the balance on his personal credit card, in violation of 18 U.S.C. § 1957. A review of the personal credit card's statements for the months of April and May of 2021, revealed TISONE primarily used the card for personal use, which included payments for airfare, hotel stays, an online dating service, retail purchases, and groceries. Additionally, on June 23, 2021, $12,000 in PPP# 5 funds were used by TISONE to make a bulk purchase of stock shares.

**Bank #2 Account Ending in 39171**

105.    On or about October 27, 2020, Bank #2 account ending in 39171 and titled "Rub a Dub Marines LLC dba rubadubeco wash" was opened at Bank #2, with TISONE listed as the sole signatory on the account. The account could be used as both a business checking account and as a primary brokerage investment account

46

to purchase stocks and other securities. On November 20, 2020, $149,900 in EIDL #3 funds were deposited by the SBA into Bank #2 account ending in 39171. Prior to the deposit of EIDL #3 funds the account had a balance of $0.00.

106.   On December 16, 2020, $12,000 in EIDL #3 funds were used by TISONE to purchase investment securities. Further, on December 21, 2021, TISONE transferred $15,600 in EIDL #3 funds to Bank #2 account ending in 39178. The balance of Bank #2 account ending in 39178 at the time of the transfer was $82.86. On December 29, 2020, $12,040.88 of the $15,600 in EIDL #3 funds transferred to Bank #2 account ending in 39178 were used by TISONE for a mortgage payment for the Ketch Residence, in violation of 18 U.S.C. § 1957.

### Lender #2 Account Ending in 2616

107.   On or about December 3, 2020, Lender #2 account ending in 2616 and titled "TEC Ventures LLC" was opened at Lender #2, with TISONE and his father A.T. listed as the account's sole signatories. The account was a business checking account. On December 28, 2020, a total of $1,476,093 in MSLP were deposited into the account by Lender #2. The account balance before the deposit was $0.00. On or about January 5, 2021, TISONE issued a $1,000,000 check from Lender #2 ending in 2616 to "TEC Ventures LLC." The check was signed by TISONE. On the same date, TISONE deposited the $1,000,000 MSLP funds check into TEC Ventures's Bank #2 account ending in 39323.

108.   TISONE used a portion of the remaining MSLP funds in the Lender #2 ending in 2616 account to purchase a residence located at 1530 Mandarin Rd.

47

Naples, FL ("Mandarin Residence"). TISONE issued a total of two checks, totaling $98,500, to a law firm for the purchase of the Mandarin Residence, in violation of 18 U.S.C. § 1957. The first, was a $5,000 check from the Lender #2 account ending in 2616 on January 19, 2021. The second, was a $93,500.00 check from the Lender #2 account ending in 2616 on February 1, 2021. Both checks were signed by TISONE. A review of the Mandarin Residence's purchase and deed records showed the property was initially purchased and deeded in TISONE's name.

### Bank #2 Account Ending in 39323

109. On or about December 29, 2020, Bank #2 account ending in 39393 and titled "TEC Ventures LLC" was opened at Bank #2, with TISONE listed as the sole signatory on the account. The account could be used as both a business checking account and as a primary brokerage investment account to purchase stocks and other securities. As discussed above, on January 5, 2021, $1,000,000 in MSLP funds was deposited by TISONE into the account. Additionally, on February 8, 2021, $104,854.17 in Second Draw PPP #4 funds for TEC Ventures were deposited by Lender #1 into the account. Prior to the deposit of MSLP and PPP #5 loan proceeds, the account's balance was $0.00.

110. Between January 12, 2021 and March 30, 2021, TISONE used approximately $1,098,708.67 in MSLP and PPP #5 funds on approximately 34 separate bulk stock and securities investment purchase transactions of over $10,000. Each of these transactions in excess of $10,000 represents a separate violation of 18 U.S.C. § 1957.

## CONCLUSION

Based on the foregoing, I have probable cause to believe that Daniel Joseph

TISONE has committed violations of 18 U.S.C. §§ 1343 (Wire Fraud), 1344 (Bank

Fraud) and 1957 (Illegal Monetary Transaction). I therefore request that the Court

issue a criminal complaint and arrest warrant for Daniel Joseph TISONE.

### **Request for Sealing**

It is respectfully requested that the Court issue an order sealing, until further

order of the Court, all papers submitted in support of the requested criminal

complaint and arrest warrant. I believe that sealing these documents is necessary

because any disclosure of the information at this time may cause flight from

prosecution, cause destruction of or tampering with evidence, cause intimidation of

potential witnesses, or otherwise seriously jeopardize the ongoing investigation.

Premature disclosure of the affidavit, the criminal complaint, and arrest warrant may

adversely affect the integrity of the investigation

Grace M. Bruno
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to me
this _30th_ day of March, 2022, in Fort Myers, Florida.

JUDGE DOUGLAS N. FRAZIER
SENIOR UNITED STATES MAGISTRATE JUDGE

49