**FILED**

APR **2 0** 2022

Clerk, US District Court
Middle District of Florida
Fort Myers, Florida

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 2:22-cr-39-SPC-NPM

DANIEL JOSEPH TISONE

18 U.S.C. § 1343
18 U.S.C. § 1344
18 U.S.C. § 1028A
18 U.S.C. § 1957
18 U.S.C. § 922(g)(1)

**INDICTMENT**

The Grand Jury charges:

**COUNTS ONE THROUGH FOUR**
**(Wire Fraud)**

**A.     Introduction**

At all times material to this Indictment:

1.     DANIEL JOSEPH TISONE ("TISONE") was a resident of the

Middle District of Florida ("MDFL"). TISONE owned and operated TEC

Ventures, LLC, Rub a Dub, LLC, Rub a Dub Atlantic, LLC, Rub a Dub Eco

Wash, LLC, and Rub a Dub Marines, LLC, which were all Virginia

corporations. TISONE also owned and operated Rub a Dub Holdings, Inc., a

Delaware corporation. TISONE was a previously convicted felon.

2.     The United States Small Business Administration ("SBA") was

an executive-branch agency of the United States government that provided

1

support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

The Paycheck Protection Program

3.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

4.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other

things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses. Individuals who operated under a sole proprietorship or as an independent contractor or eligible self-employment individual were also eligible to apply for a PPP loan.

5.      PPP loan applications were processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

6.      PPP loan proceeds were required to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

7.      The Economic Aid to Hard-Hit Small Business, Nonprofits and

Venues Act ("Economic Aid Act") was a federal law enacted in or around December 2020. The Economic Aid Act authorized the SBA to guarantee Second Draw PPP loans under generally the same terms and conditions available under the original PPP ("First Draw PPP Loans"). Only First Draw PPP Loan borrowers who had used, or will have used, the full amount of the First Draw PPP Loan on or before the expected date on which the Second Draw PPP Loan was disbursed could receive a Second Draw PPP loan. Further, a borrower would be eligible for a Second Draw PPP loan only if it had 300 or fewer employees and experienced a revenue reduction of 25% or greater in 2020 relative to 2019.  Second Draw PPP loan applicants were also required to make the same or similar certifications and representations concerning the use of PPP funds.

The Economic Injury Disaster Relief Program

8.      The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

9.      The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses

within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

10.     To obtain an EIDL and advance, a qualifying business had to submit an application to the SBA and provide information about its operation, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. For EIDL applications submitted before May 4, 2020, an EIDL applicant was required to disclose whether the applicant had been convicted of a criminal offense. The applicant also had to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

11.     EIDL applications were submitted directly to the SBA. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rents, and mortgage payments. If the applicant also obtained a

loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

The Main Street Lending Program

12.     The CARES Act provided funding for the Treasury Secretary to invest in the Main Street Lending Program ("MSLP"). The MSLP was an emergency lending program established by the Federal Reserve Board, with the Treasury Secretary's prior approval, under Section 13(3) of the Federal Reserve Act. The MSLP was designed to promote lending to small and medium sized businesses affected by the coronavirus pandemic. As part of the MSLP, the Federal Reserve Bank of Boston ("FRBB") created MS Facilities LLC—a special-purpose vehicle that borrowed funds from the FRBB and used the funds to purchase participation in loans made by private lenders that conformed to the MSLP's terms. The FRBB served as the Managing Member of the LLC, and Treasury, which contributed capital using the funds appropriated by the CARES Act, served as the Preferred Equity Member. MS Facilities LLC purchased 95 percent participations in eligible loans, while a participating private lender would retain the remaining 5 percent of each loan.

13.     The MSLP consisted of three credit facilities available to for-profit businesses: the Main Street New Loan Facility, Main Street Priority Loan Facility, and the Main Street Expanded Loan Facility. Under the

Priority Loan Facility Term Sheet, the total value of a loan must not exceed "the lesser of (i) $50 million or (ii) an amount that, when added to the Eligible Borrower's existing outstanding and undrawn available debt, does not exceed six times the Eligible Borrower's adjusted 2019 earnings before interest, taxes, depreciation, and amortization," referred to as the "EBITDA" formula.

14.    Eligible MSLP borrowers would apply through a private lender. If the lender approved the application, the lender would originate and service the loan, though it would also sell a 95 percent participation at par to MS Facilities LLC. MSLP loans were 5-year term loans. Interest repayment was deferred for the first year and principal repayment was deferred for two years.

PPP Lender

15.    Lender 1 was a federally-insured financial institution based in Luray, Virginia. Lender 1 participated in the SBA's PPP as a lender and was authorized to lend funds to eligible borrowers under the terms of the PPP.

MSLP Lender

16.    Lender 2 was a federally-insured financial institution based in Berryville, Virginia. Lender 2 participated in the MSLP as a lender and was authorized to lend funds to eligible borrowers under the terms of the MSLP.

Bank Accounts Controlled by the Defendants

17.    Banks 1 and 2 and Lender 2 were federally-insured financial

institutions that were insured by the FDIC.

18.     TISONE controlled and maintained the following financial accounts:

a.     A checking and investment account ending in -38001 at Bank 1 in the name of "Daniel Tisone" ("Bank 1 account ending in -38001"), with TISONE as the sole signatory;

b.     A checking and investment account ending in -39000 at Bank 1 in the name of "Rubadub Atlantic LLC" ("Bank 1 account ending in -39000") with TISONE as the sole signatory;

c.     A checking and investment account ending in -39171 at Bank 1 in the name of "Rub a Dub Marines LLC dba rubeadubeco wash" ("Bank 1 account ending in -39171") with TISONE as the sole signatory;

d.     A checking and investment account ending in -39323 at Bank 1 in the name of "TEC Ventures LLC" ("Bank 1 account ending in -39323") with TISONE as the sole signatory;

e.     A checking account ending in -5581 at Bank 2 in the name of "TEC Ventures LLC" ("Bank 2 account ending in -5581") with TISONE as the sole signatory;

f.     A checking account ending in -2616 at Lender 2 in the name of "TEC Ventures LLC" ("Lender 2 account ending in -2616") with

TISONE as the sole signatory.

## B.   The Scheme and Artifice

19.    Beginning on an unknown date, but no later than in or around March 2020, and continuing through the present, in the Middle District of Florida and elsewhere, the defendant,

DANIEL JOSEPH TISONE,

knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## C.   Manner and Means of the Scheme and Artifice

20.    The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

a.    It was part of the scheme and artifice to defraud that the defendant would and did engage in a scheme to obtain money from the SBA and PPP and MSLP lenders by submitting false and fraudulent EIDL, PPP, and MSLP loan applications to the SBA, Lender 1, and Lender 2 in the names of various businesses owned and controlled by the defendant.

b.    It was further part of the scheme and artifice to defraud that the defendant would and did make and cause to be made materially false

and fraudulent statements to the SBA in EIDL applications, including false
and fraudulent representations regarding the criminal history of the loan
applicant, the number of persons employed by the loan applicant, and falsely
representing the applicant's gross revenues and cost of goods sold.

      c.    It was further part of the scheme and artifice to defraud
that the defendant would and did make and cause to be made materially false
and fraudulent statements to Lender 1 in PPP loan applications, including
false and fraudulent representations regarding the applicant's average monthly
payroll and the number of persons employed by the loan applicant.

      d.    It was further part of the scheme and artifice to defraud
that the defendant would and did submit and cause the submission of
materially false and fictitious documents to the SBA, Lender 1, and Lender 2
in support of his fraudulent EIDL, PPP, and MSLP loan applications,
including false and fictitious federal income tax documents, payroll
documents, a lease agreement, and other corporate financial documents.

      e.    It was further part of the scheme and artifice to defraud
that the defendant would and did fraudulently use the means of identification
of individuals who purported to work for the defendant's companies, such as
their names, dates of birth, and social security numbers, to submit and cause
the submission of false and fraudulent payroll and payroll tax documents to

Lender 1 to qualify for PPP loans.

        f.    It was further part of the scheme and artifice to defraud that the defendant would and did fraudulently use the means of identification of an individual, such as the individual's name, date of birth, social security number, and driver's license, to submit and cause the submission of a false a fraudulent EIDL application to the SBA.

        g.    It was further part of the scheme and artifice to defraud that the defendant would and did falsely and fraudulently certify that the PPP funds acquired from the requested PPP loans would be used to retain workers, maintain payroll, or make mortgage interest payments, lease payments, and utility payments on behalf of the applicants.

        h.    It was further part of the scheme and artifice to defraud that the defendant's materially false, fraudulent, and misleading representations would and did cause the SBA, Lender 1, and Lender 2 to approve at least 4 EIDL applications, 5 PPP loan applications, and 1 MSLP loan application, resulting in the SBA, Lender 1, and Lender 2 depositing approximately $2,617,447.17 in EIDL, PPP, and MSLP funds into accounts controlled by the defendant.

        i.    It was further part of the scheme and artifice to defraud that the defendant would and did open and cause the opening of bank

accounts at Bank 1, Bank 2, and Lender 2 for the purpose of receiving EIDL, PPP, and MSLP proceeds.

   j. It was further part of the scheme and artifice to defraud that the defendant would and did use and cause EIDL, PPP, and MSLP funds to be used for unauthorized purposes and for his own personal enrichment, including the purchase of residences in Naples, FL, and stocks and investment securities.

   k. It was further part of the scheme and artifice to defraud that the defendant would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden and concealed, the purpose of the acts performed in furtherance of the scheme to defraud.

### D. Execution of the Scheme and Artifice

  21. On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

DANIEL JOSEPH TISONE,

for the purpose of executing the scheme and artifice described above, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below, each transmission constituting a separate count:

| COUNT | DATE OF WIRE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| ONE | March 30, 2020 | Electronic transmission of fraudulent EIDL application in the name of Rub a Dub Holdings, Inc. from the MDFL to the SBA's servers located outside the State of Florida |
| TWO | April 1, 2020 | Electronic transmission of fraudulent EIDL application in the name of TEC Ventures, LLC from the MDFL to the SBA's servers located outside the State of Florida |
| THREE | October 12, 2020 | Electronic transmission of fraudulent EIDL application in the name of Rub a Dub Atlantic, LLC from the MDFL to the SBA's servers located outside the State of Florida |
| FOUR | November 9, 2020 | Electronic transmission of fraudulent EIDL application in the name of Rub a Dub Marines, LLC dba Rub a Dub Eco Wash from the MDFL to the SBA's servers located outside the State of Florida |

In violation of 18 U.S.C. §§ 1343 and 2.

## COUNTS FIVE THROUGH TEN
### (Bank Fraud)

### A.   Introduction

1.     The Grand Jury hereby realleges paragraphs 1 through 18 of Counts One through Four of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

### B.   The Scheme and Artifice

2.     Beginning on an unknown date, but no later than in or around April 2020, and continuing through the present, in the Middle District of Florida and elsewhere, the defendant,

13

DANIEL JOSEPH TISONE,

did knowingly and intentionally execute, and attempt to execute, a scheme and artifice to defraud a financial institution, and to obtain monies, funds, credits, assets, and other property owned by, and under the custody and control of, a financial institution, by means of materially false and fraudulent pretenses, representations and promises.

### C.   Manner and Means of the Scheme

3.   The manner and means of the scheme and artifice are set forth in Paragraphs 20a – 20k of Counts One through Four of this Indictment, the allegations of which are realleged and incorporated by reference as if fully set forth herein.

### D.   Execution of the Scheme

4.   On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

DANIEL JOSEPH TISONE,

knowingly and with intent to defraud executed and attempted to execute the scheme and artifice to defraud a financial institution whose deposits were insured by the FDIC, as described above, and knowingly and with intent to defraud executed and attempted to execute the scheme and artifice to obtain moneys, funds, credits, assets, securities and other property owned by and

under the custody and control of a financial institution whose deposits were insured by the FDIC, by means of materially false and fraudulent pretenses, representations, and promises, as described above, in that DANIEL JOSEPH TISONE caused, and attempted to cause, the following PPP and MSLP loans to be made:

| COUNT | DATE | EXECUTION |
|---|---|---|
| FIVE | April 20, 2020 | $103,900 First Draw PPP loan from Lender 1 in the name of TEC Ventures, LLC |
| SIX | April 22, 2020 | $130,600 First Draw PPP loan from Lender 1 in the name of Rub a Dub, LLC |
| SEVEN | July 16, 2020 | $130,600 First Draw PPP loan from Lender 1 in the name of Rub a Dub Atlantic, LLC |
| EIGHT | November 9, 2020 | $1,500,000 MSLP loan from Lender 2 in the name of TEC Ventures, LLC |
| NINE | January 12, 2021 | $104,954.17 Second Draw PPP loan from Lender 1 in the name of TEC Ventures, LLC |
| TEN | March 31, 2021 | $103,900 Second Draw PPP loan from Lender 1 in the name of Rub a Dub Atlantic, LLC |

In violation of 18 U.S.C. §§ 1344 and 2.

## COUNT ELEVEN
### (Aggravated Identify Theft)

Beginning on an unknown date, but no later than in or around April 2020, and continuing through the present, in the Middle District of Florida, and elsewhere, the defendant,

DANIEL JOSEPH TISONE,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is the name, driver's license, social security number, and date of birth of A.T., during and in relation to the felony offense of wire fraud, in violation of 18 U.S.C. § 1343, as charged in Count Two of the Indictment.

In violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

### COUNT TWELVE
**(Aggravated Identify Theft)**

Beginning on an unknown date, but no later than in or around April 2020, and continuing through the present, in the Middle District of Florida and elsewhere, the defendant,

DANIEL JOSEPH TISONE,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is the name, social security number, and date of birth of S.A., during and in relation to the felony offense of bank fraud, in violation of 18 U.S.C. § 1344, as charged in Counts Five and Nine of the Indictment.

In violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

16

## COUNTS THIRTEEN THROUGH SEVENTEEN
### (Illegal Monetary Transactions)

1.      Paragraphs 1 through 18 and 20a – 20k of Counts One through Four of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.      On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendant,

DANIEL JOSEPH TISONE,

did knowingly engage and attempt to engage in a monetary transaction, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000.00, such property having been derived from specified unlawful activity, as described below, knowing that such transaction involved property and funds that were the proceeds obtained from a criminal offense, as follows:

| COUNT | DATE | SPECIFIED UNLAWFUL ACTIVITY | MONETARY TRANSACTION |
|---|---|---|---|
| THIRTEEN | May 18, 2020 | Bank fraud, in violation of 18 U.S.C. § 1344 | $19,653.60 electronic purchase of 1,000 shares of Blackrock Health Sciences Trust II with funds from the Bank 1 account ending in -38001. |

17

| FOURTEEN | November 5, 2020 | Wire fraud, in violation of 18 U.S.C. § 1343 | $185,000 wire transfer from the Bank 1 account ending in -38001 to a law firm for the purchase of a residence in Naples, FL. |
| FIFTEEN | January 5, 2021 | Bank fraud, in violation of 18 U.S.C. § 1344 | $1,000,000 check from the Lender 2 account ending in 2616 issued to TEC Ventures LLC and deposited into the Bank 1 account ending in -39323. |
| SIXTEEN | January 29, 2021 | Bank fraud, in violation of 18 U.S.C. § 1344 | $50,000 electronic purchase of 2,500 shares of Pimco Dynamic Income Opportunities Fund with funds from the Bank 1 account ending in -39323. |
| SEVENTEEN | February 1, 2021 | Bank fraud, in violation of 18 U.S.C. § 1344 | $93,500 check from the Lender 2 account ending in 2616 issued to a law firm for the purchase of a residence in Naples, FL. |

In violation of 18 U.S.C. §§ 1957 and 2.

## COUNT EIGHTEEN
### (Possession of Ammunition by a Convicted Felon)

On or about March 31, 2022, in the Middle District of Florida, the

defendant,

DANIEL JOSEPH TISONE,

knowing that he had previously been convicted in any court of a crime

punishable by imprisonment for a term exceeding one year, including:

1.     Attempted Robbery 1st Degree, on or about October 24, 2007;

2.    Assault 2nd Degree, on or about October 24, 2007;

3.    Attempted Robbery 2nd Degree, on or about October 24, 2007;

4.    Hindering Prosecution 2nd Degree, on or about October 24, 2007; and

5.    Possession of a Schedule II Controlled Substance, on or about September 20, 2012,

did knowingly possess, in and affecting interstate and foreign commerce, ammunition, that is, Speer ammunition, Winchester ammunition, Sellier & Bellot ammunition, PMC ammunition, BVAC ammunition, Remington ammunition, IMT ammunition, Fiocchi ammunition, Blazer ammunition, FC ammunition, RP ammunition, YVX ammunition, PPU ammunition, and GFL ammunition.

In violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## **FORFEITURE**

1.    The allegations contained in Counts One through Ten, and Counts Thirteen through Eighteen, are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 924(d)(1), 981(a)(1)(C) 982(a)(2)(A), and 982(a)(1), and 28 U.S.C. § 2461(c).

2.    Upon conviction of a violation of 18 U.S.C. § 1343, the defendant,

DANIEL JOSEPH TISONE,

19

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

      3.      Upon conviction of a violation of 18 U.S.C. § 1344, the defendant,

DANIEL JOSEPH TISONE,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

      4.      Upon conviction of a violation of 18 U.S.C. § 1957, the defendant,

DANIEL JOSEPH TISONE,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

      5.      Upon conviction of a violation of 18 U.S.C. § 922, the defendant,

DANIEL JOSEPH TISONE,

shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), any firearm or ammunition involved in or used in the offense.

20

6.     The property to be forfeited includes, but is not limited to, the

following:

a.     An order of forfeiture in the amount of approximately
$2,617,447.17, which represents the proceeds obtained from the
offenses as well as the amount involved in the offenses;

a.     Approximately $64,813.43 seized from Bank of Clarke County
account number ending in 2616, held in the name of TEC
Ventures LLC;

b.     Approximately $832.26 seized from JP Morgan Chase account
number ending in 8870, held in the name of TEC Ventures, LLC;

c.     a 4.02 carat solitaire, oval cut, lab-grown diamond engagement
ring, in custom 18K yellow-gold band setting, purchased from
Friendly Diamonds, on or about September 17, 2021;

d.     a 2019 Tiara 34LS boat, hull number SSUKC007L819;

e.     the real property located at 1001 10th Avenue South #101,
Naples, Florida 34102, including all improvements thereon and
appurtenances thereto, the legal description for which is as
follows:

Unit 101, OLDE NAPLES SEAPORT, a Condominium,
according to the Declaration of Condominium thereof as
recorded in Official Records Book 3869, Page 3913, as amended
from time to time, of the Public Records of Collier County,
Florida; and

g.     the real property, located at 550 Starboard Drive, Naples, Florida
34103, including all improvements thereon and appurtenances
thereto, the legal description for which is as follows:

Lot 5, Block F, THE MOORINGS, UNIT NO. 6, in accordance
with and subject to the plat thereof, recorded in Plat Book 8,
pages 7 and 8, of the Public Records of Collier County, Florida;
and

    h.    Assorted ammunition, including Speer ammunition, Winchester ammunition, Sellier & Bellot ammunition, PMC ammunition, BVAC ammunition, Remington ammunition, IMT ammunition, Fiocchi ammunition, Blazer ammunition, FC ammunition, RP ammunition, YVX ammunition, PPU ammunition, and GFL ammunition.

    7.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and

28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Trenton J. Reichling
Assistant United States Attorney

By: _____
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

FORM OBD-34
APR 1991

No. 2:22-cr-

# UNITED STATES DISTRICT COURT
Middle District of Florida
Fort Myers Division

THE UNITED STATES OF AMERICA

vs.

DANIEL JOSEPH TISONE

## INDICTMENT

Violations:

18 U.S.C. §§ 1343; 1344; 1028A; 1957; and 922(g)(1)

A true bill

_____
Foreperson

Filed in open court this 20th day

of April, 2022.

_____
Clerk

Bail $ _____

GPO 863 525